IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02873-PAB

KATHLEEN BORDEN,

　　　Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

　　　Defendant.
_____

**ORDER**
_____

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff

Kathleen Borden on November 17, 2018.  Plaintiff seeks review of the final decision of

defendant Andrew Saul (the "Commissioner")[1] denying her claim for disability insurance

benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-

83f.  The Court has jurisdiction to review the Commissioner's final decision under 42

U.S.C. §§ 405(g) and 1383(c).[2]

**I.  BACKGROUND**

On May 4, 2015, plaintiff filed an application for disability insurance benefits

("DIB") under Title II of the Act, R. at 67, 149-52, alleging a disability onset date of

_____

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of
Social Security.  Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former
Acting Commissioner of Social Security, as defendant in this lawsuit.  *See* Fed. R. Civ.
P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this
matter without the need for oral argument.

August 1, 2014.  R. at 149.  Her claims were denied on September 17, 2015.  R. at 79.

Plaintiff requested a hearing before an administrative law judge ("ALJ"), R. at 84, and a

hearing was held on June 27, 2017.  R. at 33.  On September 14, 2017, the ALJ issued

a decision denying plaintiff's claim.  R. at 25.  The ALJ found that plaintiff met the

insured status requirements of the Act through June 30, 2016 and did not engage in

substantial gainful activity during the period of her alleged disability onset date, August

1, 2014, until her date last insured, June 30, 2016.  R. at 16.  The ALJ also determined

that plaintiff has the severe impairment of hemiplegic migraines.  *Id.*  The ALJ found

that this impairment did not meet or medically equal the severity of one of the

regulations' listed impairments.  R. at 17.  Ultimately, the ALJ concluded that plaintiff

had the residual functional capacity ("RFC") to perform light work as defined in § 20

C.F.R. 404.1567(b) with the following limitations:

> [T]he claimant could lift and carry 15 pounds occasionally and 10 pounds
> frequently.  The claimant could sit for two hours at a time and for six hours
> out of an eight-hour workday.  The claimant could stand and walk for 15-
> 20 minutes at a time up to a maximum of two hours in an eight-hour day.
> The claimant could occasionally push and pull 5-10 pounds with the
> upper and lower extremities.  The claimant could occasionally reach
> above shoulder level with the left upper extremely and occasionally feel
> with the left hand.  The claimant could frequently reach above shoulder
> level and feel with the right upper extremity.  The claimant could never
> balance or climb ladders, ropes, or scaffolds, but could occasionally
> stoop, kneel, crouch, crawl, and climb ramps and stairs with the use of a
> handrail.  The claimant should . . . avoid[] concentrated exposure to
> temperature extremes of hot and cold and extreme humidity or wetness.
> The claimant could not tolerate concentrated exposure to vibrations.  The
> claimant should have never been exposed to unprotected heights or
> unprotected major manufacturing machinery.  The claimant could perform
> work at the semi-skilled level.

R. at 18.  The ALJ determined that plaintiff was capable of performing her past relevant

work as a tax preparer and telemarketer.  R. at 23.

On October 3, 2018, the Appeals Council denied review of plaintiff's claim.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.  20 C.F.R. § 416.1481.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  THE FIVE-STEP PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden

of establishing a prima facie case of disability under steps one, two, and four, the

burden shifts to the Commissioner to show the claimant has the residual functional

capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731

(10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the

claimant has the initial burden of proving a disability, "the ALJ has a basic duty of

inquiry, to inform himself about facts relevant to his decision and to learn the claimant's

own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) impermissibly excluding plaintiff's other

potential severe impairments from his evaluation of plaintiff's disability; (2) finding that

plaintiff's testimony was not consistent with the medical evidence of record; and

(3) failing to consider plaintiff's need to use a cane in the RFC determination.  Docket

No. 12 at 4-8.  Defendant responds that the ALJ reasonably considered the entire

record in making his decision and that the ALJ's decision is supported by substantial

evidence.  Docket No. 13 at 9.

### A.  Plaintiff's Impairments

At step two of the five-step process, the ALJ concluded that plaintiff had the

severe impairment of hemiplegic migraines.  R. at 16.  Plaintiff argues that the ALJ

failed to properly evaluate whether her obstructive sleep apnea and osteoarthritis in her

left knee also constitute severe impairments.  Docket No. 12 at 5; *see also* R. at 17

(ALJ finding that plaintiff's sleep apnea and osteoartritis "did not constitute severe

5

medically determinable impairments"). Defendant argues that "the issue of whether the ALJ found Plaintiff's sleep apnea and knee pain to be severe or non-severe impairments at step two is not legally relevant because the ALJ found that she had another severe impairment" and proceeded with her evaluation of plaintiff's claim under the five-step test. Docket No. 13 at 11.

A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). The second step of the five-step process requires a finding that "the claimant has a severe impairment" in order to move on to the next steps. *Trimiar*, 966 F.2d at 1329. "Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two." *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished). The ALJ's "failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) ("The ALJ . . . made an explicit finding that Ms. Oldham suffered from severe impairments. That was all the ALJ was required to do in that regard."). Because the ALJ found that plaintiff was severely impaired due to her hemiplegic migraines, any alleged error in his decision that plaintiff's osteoporosis or sleep apnea were not severe impairments would be harmless error. Accordingly, the Court finds that this is not an appropriate basis for reversal.

### B.   Plaintiff's Testimony

Plaintiff contends that the ALJ erred when he determined that plaintiff's testimony was inconsistent with the medical evidence of record. Docket No. 12 at 6.

She argues that "the ALJ essentially failed to consider the totality of the impact that

[plaintiff's] headaches have on [her] ability to function in her daily life and on her ability

to work" and that the ALJ cherry-picked evidence "that supported an unfavorable

determination while ignoring or downplaying evidence that supported a favorable

decision." *Id.*  Plaintiff also argues that, while she displayed "some improvement

through physical therapy," she nevertheless displayed decreased strength, diminished

reflexes, and poor balance. *Id.* at 7.  Finally, plaintiff challenges the ALJ's finding that

plaintiff's activities of daily living were greater than one would expect of a fully disabled

individual. *Id.*  She argues that the ALJ improperly relied upon her limited activity as

evidence that she could sustain full-time employment without unexpected absences,

because her ability to perform those activities depends on how plaintiff feels day-to-

day. *Id.* at 7-8.

"Credibility determinations are peculiarly the province of the finder of fact, and

we will not upset such determinations when supported by substantial evidence." *Diaz*

*v. Sec. of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "However,

findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d

387, 391 (10th Cir. 1995) (citation and alteration marks omitted).  The Tenth Circuit has

held that, in determining whether a claimant's subjective complaints of pain are

credible, the ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of
> medical contacts, the nature of daily activities, subjective measures of
> credibility that are peculiarly within the judgment of the ALJ, the
> motivation of and relationship between the claimant and other witnesses,

7

1 of 17

and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004).

At her hearing, plaintiff testified that she experienced headaches every day and that the intensity of these headaches varied hour by hour.  R. at 19.  The ALJ found that "the medical evidence [was] inconsistent with the claimant's allegations about the debilitating nature of [her headaches]."  *Id.*  To support this finding, the ALJ provided an overview of plaintiff's migraine-related medical history from August 1, 2014 until June 30, 2016, the date that plaintiff was last insured.[3]  R. at 19-20.  This history included the frequency of plaintiff's medical visits, medical tests performed on plaintiff such as CT scans and MRIs, plaintiff's attempts to obtain relief with medication and the medication's effectiveness, and a general trajectory of improvement in the plaintiff's headache-related symptoms with some setbacks in symptoms.  *See id.* (noting that plaintiff reported improvement in her migraines on November 19, 2014, April 13, 2015, October 27, 2015, and February 16, 2016).

Plaintiff nevertheless argues that the ALJ cherry-picked evidence when he "noted that [plaintiff] reported that her headaches in the two weeks prior to November 19, 2014 were mostly mild" because this self report "was not inconsistent with her testimony that the severity of her headaches varies from day to day and even hour to hour."  Docket No. 12 at 6-7.  However, as set out above, the November 19, 2014 report of improvement in plaintiff's migraine symptoms was not the only piece of

---

[3] To qualify for disability benefits, plaintiff must demonstrate that she was disabled prior to her last insured date.  *Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006).

evidence that the ALJ relied upon in his decision.  Instead, he relied on medical

evidence, spanning almost two years, demonstrating a pattern of improvement in

plaintiff's migraines.  R. at 19-21.  Moreover, in reaching his conclusions as to the

severity of plaintiff's headaches, the ALJ considered plaintiff's report that her

headaches varied in intensity by day and by hour.  R. at 19.  Plaintiff has not

established why the fact that her reports of symptom improvement and her statement

that her headache symptoms vary day-by-day – both of which the ALJ considered in his

decision – are "not inconsistent" gives rise to a reversible error.  The Court finds that

the ALJ's decision was based on substantial evidence, and the Court will not second-

guess the ALJ's credibility determinations.  *Diaz*, 898 F.2d at 777.

Plaintiff argues that the ALJ cherry-picked unfavorable medical evidence of her

physical symptoms in his decision denying disability benefits.  Docket No. 12 at 7.  She

notes that, on July 29, 2015, she "continued to display decreased strength, decreased

reflexes and poor balance."  *Id.*[4]  Although plaintiff does not set out a specific

argument concerning this evidence, the Court construes this as an argument that the

ALJ failed to consider this evidence in reaching his decision.

Plaintiff is correct that the ALJ did not mention in his decision that, on July 29,

2015, plaintiff was experiencing decreased strength, decreased reflexes, or poor

balance.  R. at 19.  Instead, the ALJ stated that, "[b]y July 29, 2015, the claimant

---

[4] Plaintiff also notes that, on July 19, 2016 and October 17, 2016, she displayed
decreased strength, an abnormal gait, and decreased sensation in her face, neck, legs,
and feet.  *Id.*  However, because this medical evidence is dated after plaintiff's last
insured date, it is not relevant in determining whether plaintiff was disabled on June 30,
2016.  *Blea*, 466 F.3d at 909.  The Court will not consider evidence after June 30, 2016
in determining whether the ALJ's decision was supported by substantial evidence.

reported improved balance with physical therapy, but noted that her copay was high and that she would continue with home exercises." R. at 19. However, the evidence that plaintiff cites, *see* Docket No. 12 at 7, does not support plaintiff's contention that she "continued to display decreased strength [and] decreased reflexes" on July 29, 2015. *See* R. at 607-08. Instead, this physical therapy discharge report indicates that plaintiff self-reported that her balance had improved and that she exhibited improved balance control. *Id.* It does state that plaintiff's balance was "poor" on both her left and right sides when her eyes were open. R. at 608.

The Court does not find that the ALJ's failure to mention that plaintiff was experiencing poor balance with her eyes open on July 29, 2015 to be reversible error. "[A]n ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). The Court finds that the fact that plaintiff experienced poor balance on July 29, 2015 is not so significantly probative so as to render the ALJ's failure to discuss this evidence reversible error, particularly where the ALJ otherwise extensively covered plaintiff's issues with balance. *See* R. at 19 (noting that, on June 11, 2015, plaintiff reported difficulty with balance and that she had begun to use a walker to remedy balance problems; and that, on August 13, 2015, Dr. Millen "found imbalance"); *see also* R. at 20 (noting that, on November 20, 2015, plaintiff reported worsening symptoms; that, on January 19, 2016, plaintiff reported balance difficulties; and that, on April 7, 2016, plaintiff reported using an assistive device when necessary). In addition to considering these limitations, the ALJ

also noted medical evidence that was unfavorable to plaintiff's claim.  *See* R. at 19

(noting that a physician found normal coordination, strength, and reflexes on January

20, 2015).  The ALJ also discussed that, on January 19, 2016, a physician found "full

strength, normal finger to nose and heel to shin, intact sensation, [and] equal and

symmetric reflexes," and on May 19, 2016, plaintiff reported that her balance was

improving.  R. at 20-21.

Accordingly, the Court does not find that the ALJ cherry-picked unfavorable

evidence of plaintiff's physical symptoms.  The ALJ considered the full extent and

progression of plaintiff's physical limitations, including a range of favorable evidence,

but ultimately found that this evidence did not demonstrate that plaintiff's disability was

as disabling as plaintiff suggested as of June 30, 2016.  The Court's task is not to

reweigh this evidence, but to determine if the ALJ's decision is supported by substantial

evidence.  *Branum*, 385 F.3d at 1270.  The Court finds that it is, and finds that there is

no reversible error here.

Finally, plaintiff argues that the ALJ erred by using evidence of plaintiff's daily

activities as evidence that she is not fully disabled.  Docket No. 12 at 7.  She argues

that the "ALJ impermissibly relied on [her] limited activities as evidence that she could

sustain full-time work activity without unexpected absences because of her migraines

and fatigue" because her ability to do these activities varied day by day.  *Id.* at 7-8.

Plaintiff relies upon *Thompson*, 987 F.2d at 1490, for the proposition that "the ALJ may

not rely on minimal daily activities as substantial evidence that a claimant does not

suffer disabling pain."  Docket No 12 at 7.  Defendant responds that it was reasonable

for the ALJ to consider plaintiff's daily activities because, under 20 C.F.R.

§ 404.1529(c)(3)(i), the ALJ "must consider a claimant's activities."  Docket No. 13 at

13.

Section 404.1529 of Title 20 of the Code of Federal Regulations governs how an

ALJ evaluates a claimant's symptoms.  It provides that the ALJ will consider the

claimant's daily activities as evidence relevant to evaluating the claimant's symptoms

on the basis that "how the symptoms may affect [the claimant's] pattern of daily living"

is "an important indicator of the intensity and persistence" of the claimant's symptoms.

20 C.F.R. § 404.1529(c)(3)(I); *see also Branum*, 385 F.3d at 1273 (stating that the ALJ

should consider the claimant's daily activities as a factor in evaluating whether

subjective complaints of pain are credible).  However, plaintiff is correct in that, under

*Thompson*, minimal daily activities, standing alone, are not sufficiently substantial

evidence to find that a plaintiff's subjective complaints of pain are incredible.  "[A]n ALJ

may not rely on the performance of minimal daily activities alone as substantial

evidence that a claimant does not suffer disabling pain," but may consider daily

activities as one of many factors considered in the ALJ's credibility determination.

*Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) (citing

*Thompson*, 987 F.2d at 1490)); *see also Borgsmiller v. Astrue*, 499 F. App'x 812, 818-

19 (10th Cir. 2012) (unpublished) ("Although the ALJ did not err in considering Ms.

Borgsmiller's activities of daily living, she may not rely on minimal daily activities as

substantial evidence that a claimant does not suffer disabling pain.") (quotation

omitted).  Accordingly, the ALJ's consideration of plaintiff's daily activities in his

credibility determination was not in error.

Here, the ALJ found that "the claimant's activities of daily living are greater than

12

what one would expect of a fully disabled individual." R. at 21. The ALJ noted that plaintiff could "prepare simple meals and perform some limited cleaning," could "drive short distances and go shopping with someone," and that plaintiff "enjoyed watching television, reading, and watching birds." *Id.* The ALJ also emphasized that plaintiff reported doing at-home physical therapy exercises. R. at 21. However, the ALJ failed to mention significant contextual evidence of plaintiff's daily activities. The ALJ did not mention that, in 2015, plaintiff reported that she sometimes needed assistance getting dressed, bathing, eating, or using the bathroom. R. at 211. And while plaintiff can prepare "simple meals," as the ALJ noted, the meals that plaintiff reported that she could prepare were microwaveable meals or cereal. R. at 212. Plaintiff indicated that preparing these meals takes her three times as long as it used to. *Id.* And although plaintiff indicated that she can drive short distances or to her doctor's office, she stated that she gets dizzy and confused while driving and that she "[does not] drive much anymore" because driving is "too hard." R. at 213. The ALJ did not mention these limitations accompanying plaintiff's daily activities, despite the fact that this evidence "went directly to some of the factors an ALJ should consider in making a credibility determination." *Sandoval v. Barnhart*, 2004 WL 7337671, at *9 (D.N.M. June 2, 2004). The Court finds that the ALJ's description of plaintiff's daily activities improperly considered only evidence favorable to his decision and does not paint an accurate picture of plaintiff's abilities. The "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson*, 987 F.2d at 1490 (quotation omitted) (alteration marks in original); *see also Byron v. Heckler*, 742 F.2d 1232, 1235-36 (10th Cir. 1984) (finding that plaintiff's

13

activities of jogging and intermittent work as a janitor were not inconsistent with plaintiff's complaints of pain); *Thompson*, 987 F.2d at 1489 (finding error in ALJ's reliance on plaintiff's minimal daily activities of visiting neighbors and doing light housework).

However, the ALJ's undue reliance on plaintiff's daily activities to challenge plaintiff's credibility does not necessarily constitute reversible error. *See Stilson v. Colvin*, No. 14-cv-00358-CBS, 2016 WL 852763, at *6 (D. Colo. Mar. 4, 2016) (remand not warranted where plaintiff's daily activities "were but one of the many reasons supporting the ALJ's credibility assessment"). In finding that plaintiff's subjective complaints of pain were not credible, the ALJ did not rely solely on plaintiff's minimal daily activities as prohibited by *Thompson*. The ALJ also considered plaintiff's medication and its effectiveness, plaintiff's medical visits and self-reports, and the consistency of plaintiff's testimony with objective medical evidence. R. at 19-21. These factors were appropriately considered by the ALJ and serve as a basis for the ALJ's credibility determination independent from the ALJ's consideration of plaintiff's daily activities. *Branum*, 385 F.3d at 1273. Because the ALJ considered a number of appropriate factors in making his credibility determination, the Court cannot conclude that the ALJ's determination is not supported by substantial evidence. *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) ("Credibility determinations are peculiarly the province of the finder of fact" and a court should "not upset such determinations when supported by substantial evidence.").

## C.   Plaintiff's Need to Use a Cane

Finally, plaintiff argues that the ALJ failed to include her need to use a cane in

the RFC determination.  Docket No. 12 at 8.   She argues that her use of a cane likely "would have interfered with the handling, reaching and fingering requirements of her past work, along with the lifting and carrying requirements of her past work."  *Id.* at 9. Plaintiff does not cite to any case law indicating that an ALJ must specifically delineate which portions of a medical provider's opinions to which he gives weight, *see* Docket No. 12 at 8-9, but appears to argue that, had the ALJ considered Dr. Phelps' opinion concerning plaintiff's cane use, plaintiff would have been found to be incapable of returning to her past work and, as a result, would have been found to be disabled absent a showing of transferable skills.  *Id.* at 9.

The Court is not convinced by plaintiff's argument.  "Though the ALJ must consider all relevant evidence, the ALJ need not discuss every bit of evidence."  *Trudell v. Colvin*, No. 14-cv-02060-KMT, 2015 WL 5579576, at *5 (D. Colo. Sept. 22, 2015) (emphasis omitted) (citing *Clifton*, 79 F.3d at 1009-10).  When assigning weight to a record medical opinion, the ALJ considers six factors set out in 20 C.F.R. § 404.1527, which include the treatment and examining relationships, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c).  An ALJ does not need to "recite and assess each one of [the] six factors with respect to every opinion in the record."  *Nurre v. Colvin*, No. 16-cv-01262-RBJ, 2017 WL 2333098, at *3 (D. Colo. May 30, 2017). However, the ALJ "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight."  *Id.* (quotation omitted).

The ALJ found that Dr. Phelps' opinion concerning plaintiff's abilities was "generally consistent" with the evidence of record and gave the opinion partial weight.

R. at 22.  He referenced multiple portions of the record that he believed were in-line with Dr. Phelps' opinion.  *Id.*  The ALJ also noted that Dr. Phelps, as the state agency medical consultant, "has extensive program knowledge and is very familiar with the Social Security disability process."  *Id.*  The Court finds that the ALJ adequately explained the weight he assigned to Dr. Phelps' opinion.  *See Trudell*, 2015 WL 5579576, at *5 (finding that the ALJ's explanation was sufficient because, while the ALJ had not discussed or recited the six factors, it was clear that the ALJ had considered them).

Moreover, the opinion from Dr. Phelps referenced by plaintiff is not an opinion that plaintiff cannot walk without a cane.  Docket No. 12 at 8.  Rather, Dr. Phelps opined that plaintiff "should be allowed to use [a cane] as needed."  R. at 75.  Thus, the ALJ did not disregard or fail to mention his rejection of any "significantly probative" opinion that plaintiff's physical condition necessitated the use of a cane.  *Haga*, 482 F.3d at 1207.  Insofar as plaintiff argues that the ALJ failed to account for plaintiff's "dizziness, poor balance, decreased strength and decreased reflexes," the ALJ considered plaintiff's dizziness, issues with balance, and decreased strength or reflexes in his decision.  *See* R. at 18-20.  That the ALJ did not mention each of these limitations in his weighing of Dr. Phelps' opinion does not constitute reversible error.  *See Trudell*, 2015 WL 5579576, at *5.  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Court finds that the ALJ's decision was supported by substantial evidence and that reversal is not warranted.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED**.  It is further

**ORDERED** that this case is closed.


DATED June 1, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge